NOT DESIGNATED FOR PUBLICATION

No. 117,645

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER MICHAEL PARTRIDGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed December 7, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Joseph Penney*, assistant county attorney, *Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., PIERRON and BUSER, JJ.

PER CURIAM: A jury convicted Christopher Partridge of two counts of aggravated criminal sodomy and two counts of aggravated endangering a child. Partridge appeals his convictions and sentences. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At the jury trial, the following facts were presented as evidence. Partridge is the uncle of B.C., who was 15 years old on December 4, 2014. B.C. had attended special education classes since the third grade and had an individual education plan to provide

1

him with special assistance in learning while in school. From 2010 until early 2016, Partridge lived with his father, his girlfriend, and his uncle in a house in El Dorado. During these years, B.C. frequently visited and sometimes spent weekends at the house.

When B.C. was 10 years old, Partridge began occasionally touching the boy's crotch. B.C. did not know how to react to this inappropriate touching. When B.C. was 13 or 14 years old, Partridge began injecting him with methamphetamine. Partridge injected B.C. with up to 100 units of the drug at a time, which, on occasion, caused B.C. to black out.

The evidence at trial revealed numerous occasions when, after Partridge injected B.C. with methamphetamine, Partridge engaged in anal sodomy with B.C. Although B.C. was unsure of the number of times that Partridge sexually abused him, he estimated it occurred on about 20 occasions. At trial, B.C. testified that he was under the influence of methamphetamine every time Partridge sexually assaulted him:

"Q: Okay. When you would go to your uncle's house—Christopher's house and these sexual acts would—took place, were you always under the influence?
"A: Yes.
"Q: Okay. Did you ever have these sex acts occur when you were not under the influence?
"A: No.
"Q: Did you want to have sex with [Partridge]?
"A: No.
. . . .
"Q: Okay. All right. Again, whenever these sex acts would occur, were you under the influence?
"A: Yes, I was.
"Q: Did you ever go to his house when you were under the influence that they didn't occur?
"A: No."

2

B.C. remembered that on one occasion while he was under the influence of methamphetamine, Partridge anally penetrated him. B.C. testified that he was aware of the anal penetration because he awoke during the middle of the act. When asked whether he could get away from Partridge during the sexual assaults, B.C. stated he could not "[b]ecause I was too high really to do anything. Too weak." Despite the sexual assaults, B.C. continued going to Partridge's house "[s]o I could get some more drugs. So I could get some more meth."

With regard to oral sex, B.C. testified that he could not recall having oral sex with Partridge, but he agreed "it could have happened."

B.C. testified the sexual abuse stopped when he was almost 16 years old because he was able to fight off Partridge's sexual advances. He recalled one incident when he got into a fight with Partridge because of Partridge's sexual assaults. The fight ended when two people intervened to restrain B.C.

Sergeant Jeffrey Murphy of the El Dorado Police Department testified he interviewed Partridge regarding the sexual abuse of B.C. During the interview, Partridge claimed that he began sexually abusing B.C. after he saw B.C. naked.

One sexual encounter was the focus of Sergeant Murphy's interview. According to Partridge, he admitted to anally penetrating B.C. when his nephew was 15 years old. When Sergeant Murphy asked how that sexual encounter began, Partridge stated, "[B.C.] started—started playing with my—my dick. And he started sucking on it and one thing led to another." With regard to that incident, the following colloquy occurred between Sergeant Murphy and Partridge:

"Q: You said he gave you oral sex. Was this a different time or the same time?
"A: Same time.

"Q: Same time? Did he give you oral sex afterward or before you had anal sex with him?

"A: Before.

"Q: Before? And how were you positioned when that happened?

"A: I was [lying] down.

"Q: Okay. And where was he?

"A: He was at the—I was [lying] at one end of the couch and he was [lying] at the other end of the couch. And he got up underneath the blanket and started playing around. And—that's when he started, you know, playing with it and started sucking on it. Actually, he kind of asked me to, you know, do it."

According to Partridge, he only anally penetrated B.C. on that one occasion because in previous attempts, "I just—tried to get in, couldn't get in. So I—you know, I'd stop and I'd jack off. Finish myself off that way." When Sergeant Murphy advised Partridge that B.C. said the anal encounters occurred on about 20 occasions over the years, Partridge said that he "possibly" agreed with that estimate. Still, Partridge said, "I only had it once with him and I told him I couldn't do it no more because it wasn't right and I just didn't feel right doing it. (inaudible) bad after I did it."

Partridge admitted injecting B.C. with methamphetamine on two or three occasions, but he denied providing him with methamphetamine. Partridge also denied being on methamphetamine at the time of the oral and anal sexual incident.

During the time period when the sexual assaults occurred, Partridge's girlfriend lived in the house with him. At trial, she recalled one evening in June or July 2015 (when B.C. was 15 years old) when Partridge told her that he had sexual intercourse with B.C. She testified, "[Partridge] had told me one night when we were in the bed watching TV, that he had something to tell me. And he said that—to take it to my grave. And he told me that he had had sexual intercourse with B.C." According to his girlfriend, Partridge used methamphetamine before sexually assaulting B.C. and that B.C. did not want to

4

have sexual relations with Partridge. She also provided eyewitness testimony that on one occasion she observed Partridge inject B.C. with methamphetamine.

The State charged Partridge with two counts of aggravated criminal sodomy, alleging that he engaged in oral and anal sodomy with B.C. without his consent and while he was incapable of giving consent because he was under the effect of alcohol, liquor, narcotic, drug, or other substance and such condition was known or reasonably apparent to Partridge. The State also alleged Partridge committed two counts of aggravated endangering a child. The jury found Partridge guilty on all four counts. The district court sentenced Partridge to a controlling term of 299 months' imprisonment with lifetime postrelease supervision. Partridge filed a timely appeal.

SUFFICIENCY OF EVIDENCE OF AGGRAVATED CRIMINAL SODOMY

Partridge contends there was insufficient evidence to prove that he committed oral aggravated criminal sodomy against B.C. as charged in Count I and anal aggravated criminal sodomy as charged in Count II. The jury was instructed on the elements of each offense in instruction No. 8 (Count I) and instruction No. 11 (Count II). Instruction No. 8 advised the jury that the State must prove that Partridge engaged in "oral contact of the male genitalia" and instruction No. 11 advised the jury that the State must prove that Partridge engaged in "anal penetration."

In all other respects, instruction Nos. 8 and 11 were identical. The jury was instructed that the State must prove:

"(2) [B.C.] was incapable of giving consent because of the effect of methamphetamine, which condition was known by [Partridge] or was reasonably apparent to [Partridge].
"(3) [Partridge] acted intentionally, knowingly, or recklessly.

5

"(4) That act occurred on or about the 2nd day of December, 2014, through the 2nd day of December, 2015, in Butler County, Kansas."

In particular, Partridge claims there was insufficient evidence to prove the second element of both charges of aggravated criminal sodomy. He asserts there was insufficient evidence of oral sodomy (Count I) because "there was no evidence that B.C. was unable to consent to the oral contact with Mr. Partridge's genitalia because of the effect of methamphetamine and that B.C.'s condition was 'known by [Partridge] or was reasonably apparent to [Partridge].'" Similarly, with regard to anal sodomy (Count II), Partridge identifies the insufficiency as "there was no evidence that B.C. consumed methamphetamine during this incident."

Our standard of review is well established. When the sufficiency of the evidence is challenged in a criminal case, "[a]fter reviewing all the evidence in a light most favorable to the prosecution, the appellate court must be convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014). We will review this claim of error by individually analyzing Counts I and II in reverse order.

*Anal Sodomy*

Partridge asserts there was insufficient evidence at trial that B.C. was under the influence of methamphetamine when he anally penetrated B.C. when he was 15 years old. This claim of error focuses on one incident in particular—the incident of oral and anal sodomy which occurred on the couch in the living room of Partridge's house when B.C. was 15 years old (the couch incident). Partridge admitted in detail to both oral and anal sexual relations with B.C. during the couch incident. We will discuss this incident in the next section.

6

Apart from the couch incident, however, Partridge candidly concedes that B.C. testified he was under the influence of methamphetamine during all of the incidents in which he was anally penetrated. But Partridge complains there was no "reliable evidence that one of these other incidents—incidents during which there was evidence that B.C. was under the influence of methamphetamine—occurred during the charged time frame of December 2, 2014, to December 2, 2015. We disagree.

B.C. testified that he was always under the influence of methamphetamine when Partridge sexually abused him and sexual contact never occurred when he was not under the influence of the drug. This testimony clearly applied to the 20 occasions when, according to B.C., Partridge committed anal sodomy. As detailed earlier, Partridge's girlfriend testified about one evening in June or July 2015—during the charged time frame—when Partridge admitted to her that he had sexual intercourse with B.C. According to her testimony, Partridge said he had used methamphetamine before anally penetrating B.C., and B.C. did not want to have sexual relations with Partridge. She also confirmed, based on her eyewitness observation, that she saw Partridge inject B.C. with methamphetamine on one occasion.

Considering all of the testimony together, in a light most favorable to the State, we are convinced the jury could have found Partridge guilty beyond a reasonable doubt of having committed aggravated criminal sodomy by anally penetrating B.C. as charged in Count II.

*Oral Sodomy*

At trial, there was evidence of one incident of oral sodomy. This sex act preceded Partridge anally penetrating B.C. on the couch. As noted earlier, Partridge admitted to the oral and anal contact during the couch incident. Partridge did not identify the date of the couch incident although he believed it occurred when B.C. was 14 or 15 years old.

7

According to Partridge, this was the only time he engaged in oral and anal sexual conduct with B.C. For his part, B.C. testified that he could not recall having oral sex with Partridge, but that "it could have happened."

In assessing the sufficiency of this evidence to prove that oral sodomy occurred, we reiterate B.C.'s all-encompassing testimony that he was *always* under the influence of methamphetamine when Partridge sexually abused him and that sexual contact *never* occurred when he was not under the influence of the drug. Partridge's testimony placed the couch incident within the charged time frame of December 2, 2014, to December 2, 2015. In a light most favorable to the State, Partridge's admission to engaging in oral sexual conduct during the couch incident, coupled with B.C.'s testimony, convinces us the jury could have found the defendant guilty beyond a reasonable doubt of having committed oral aggravated criminal sodomy during the time frame charged in Count I.

In particular, Partridge claims there was no evidence at trial that B.C. was under the influence of methamphetamine before or during the last incident, which is the only incident occurring during the time frame listed in the complaint and the jury instructions. This assertion is premised on Partridge's testimony that the couch incident was the only and, therefore, the *last* sexual encounter between B.C. and him. Partridge then highlights the cross-examination of B.C. when B.C. testified that he was not really high on methamphetamine during the last time Partridge engaged in sexual conduct with him.

Partridge's contention is predicated on the mistaken notion that the couch incident (identified by Partridge as the only and, therefore, the last incident) is the *same* incident that B.C. referenced when he testified on cross-examination that he was not really high during the last sexual encounter with Partridge. As noted earlier, however, B.C. testified he had no recollection of the couch incident. Moreover, B.C. informed Detective Hayes when he was interviewed that he did not recall the last sexual encounter with Partridge or the date it occurred. In fact, although B.C. thought the last encounter occurred when he

8

was 15 years old, he acknowledged that it could have happened in early 2016 when he was 16 years old. In short, Partridge's claim fails because there is controverted evidence regarding whether the couch incident was the last sexual encounter referenced by B.C.

Of course, the jury was fully apprised of this conflicting evidence and B.C.'s overarching testimony that he was always under the influence of methamphetamine when the sodomies occurred. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Kettler*, 299 Kan. at 466. Considering all of the testimony together, in a light most favorable to the State, we are convinced the jury could have found the defendant guilty beyond a reasonable doubt of having committed oral aggravated criminal sodomy as charged in Count I.

*Limiting Instruction*

In his interview with Detective Hayes, B.C. stated Partridge was a methamphetamine addict and he had been caught with dope. The State played the video of B.C.'s interview during trial and admitted the DVD into evidence as State's Ex. 1. Partridge contends that because possession of methamphetamine is a crime, the district court should have instructed the jury not to consider this evidence of a prior crime as evidence of his propensity to commit the crimes charged.

When a party addresses an instruction issue for the first time on appeal, the standard of review is clearly erroneous. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). To determine if the failure to give the instruction was clearly erroneous, we must first determine if there was any error, through an unlimited review of the entire record. 295 Kan. at 515-16. If an error occurred, it is reversible only if we are firmly convinced that the jury would have reached a different verdict had the instruction been given. The defendant has the burden of establishing that the error warrants reversal. 295 Kan. at 516.

9

Limiting instructions for the admission of K.S.A. 60-455 evidence are "designed to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006). The first step of the analysis is determining whether an error occurred. In doing so, this court must determine whether B.C.'s statements qualify as K.S.A. 2017 Supp. 60-455 evidence.

*Do B.C.'s Statements Qualify as K.S.A. 2017 Supp. 60-455 Evidence?*

The State contends the evidence complained of is res gestae. Res gestae refers to closely connected acts that occurred before, during, or after the commission of the charged crime, which, in reality, become part of the occurrence. *State v. Butler*, 307 Kan. 831, 861, 416 P.3d 116 (2018). K.S.A. 2017 Supp. 60-455 does not eliminate res gestae evidence. 307 Kan. at 861. The State asserts that being a methamphetamine addict is not a crime and the statements provide no information about a specific incident of possession.

This evidence was not res gestae, as the statements do not specifically speak to acts before, during, or after the crime. B.C. provided no timeline for Partridge being "caught with dope" and the comment that he was a methamphetamine addict is more of a state of being than a remark on any particular incident. Additionally, because of the behaviors related to methamphetamine addiction, jurors could have considered his methamphetamine addiction to strengthen Partridge's propensity to commit sodomy. Thus, a limiting instruction would have been proper and the district court's failure to provide such instruction was an error.

10

*Was the District Court's Failure to Provide a Limiting Instruction Clear Error?*

Although the district court erred in not providing a limiting instruction, the error was harmless. To be clear error, Partridge would have had to convince us that the jury would have reached a different verdict had the court provided the instruction. B.C. alleged Partridge injected methamphetamine into his veins and Partridge admitted to doing so. B.C. alleged Partridge sodomized him and Partridge admitted to doing so. B.C. had no recollection of performing oral sex on Partridge, but Partridge admitted to it, which provided the basis for Count I of the information. B.C. alleged that Partridge had sexually molested him approximately 20 times while he was not coherent because of Partridge providing him methamphetamine. Though Partridge did not admit to injecting B.C. with methamphetamine that many times, he agreed that he had tried to have anal sex with B.C. approximately 20 times. The only element Partridge contested was whether B.C. was high on methamphetamine at the time of the incidents charged. B.C. contended he was always on methamphetamine when sexual contact occurred between them.

The evidence that Partridge committed aggravated criminal sodomy is substantial and a limiting instruction would not have affected the outcome of the trial. Even though the district court should have provided a limiting instruction for B.C.'s statements, the error was harmless.

*Using Prior Convictions to Increase Sentence*

Partridge asserts the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by using his prior convictions to increase his maximum penalty. He acknowledges the Kansas Supreme Court has determined the use of prior convictions to determine the offender's sentence is not a constitutional violation and he presents the issue to preserve it for federal review.

11

A challenge to the constitutionality of the revised Kansas Sentencing Guidelines Act (KSGA) involves a question of law, over which this court has unlimited review. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

Partridge claims that *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), requires the State to include any fact that could increase the maximum penalty of a defendant in the charging document and prove it beyond a reasonable doubt, a determination for the jury. He acknowledges the Kansas Supreme Court's decision in *Ivory*, but includes the issue for the sake of preservation.

In *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), the Court determined that the United States Constitution does not require the prosecution to submit the fact of a prior conviction to a jury for proof beyond a reasonable doubt. The *Apprendi* Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In deciding *Apprendi*, the Supreme Court did not overrule *Almendarez-Torres*, but created an exception to the rule. 530 U.S. at 489-90.

The Kansas Supreme Court addressed this issue in *Ivory*, determining use of a defendant's criminal history score as a basis for sentencing under the KSGA does not present an *Apprendi* issue. 273 Kan. 44, Syl. Therefore, use of an offender's criminal history as a basis for sentencing is constitutional.

Affirmed.